WILLIAM SMITH and another, Ex'rs, v. J. W. STEWART and others.

*Agreement to Sell Land—Rescission—Rent—Improvements.*

Upon the voluntary rescission of a contract for the sale of land, the vendee having been in possession, he is entitled to a return of the purchase-money, and the vendor to a fair rental for the use and occupation of the land, less the value of the permanent improvements placed thereon by the vendee; such value being estimated, not by their cost to the vendee, but by the extent to which they have enhanced the worth of the land.

(*Wetherell* v. *Gorman,* 73 N. C., 380; *Hill* v. *Brower,* 76 N. C., 124, cited and approved.)

CIVIL ACTION tried at Fall Term, 1879, of MECKLENBURG Superior Court before *Buxton, J.*

The case was heard upon exceptions to an account, and the defendants appealed from the ruling and judgment of the court below.

SMITH *v.* STEWART.

*Mr. A. Burwell,* for plaintiffs.

*Messrs. Wilson & Son,* for defendants, cited the following cases, referred to in the opinion of this court, *Pearsall* v. *Myers,* 64 N. C., 549; *Dunn* v. *Tillery,* 79 N. C., 497; *Hook* v. *Fentress,* Phil. Eq., 229; *Lowder* v. *Roding,* 8 Ired. Eq., 208.

SMITH, C. J. The plaintiffs' action is to recover the amount due from the defendants on their promissory note given for a tract of land sold by them as executors of J. A. Campbell, and as the property of their. testator, and the defence set up is the want of title in the vendors.

When the cause was called for trial it was by consent of parties adjudged that the contract of sale be rescinded and the note canceled, and a reference was made to the clerk to ascertain and report the rents and profits of the land during the occupancy of the defendant, Stewart.

The clerk accordingly proceeded to take the account, both parties being present, and to hear the evidence adduced, and made his report ascertaining the balance due for the use and occupation, after allowing sundry credits, to be $588.68. To this report the defendants filed numerous exceptions, which, condensed in form, are as follows:

1. That the plaintiffs are not entitled to any compensation for the use of the land, and if they are so entitled, the measure of the compensation is the interest due on the purchase money.

2. That the annual rental allowed ($150) is excessive and not sustained by the weight of the testimony.

3. That no interest should be charged on the annual sums.

4. That the defendant has not been allowed divers credits, to-wit, for

a. Repairs on out-buildings.

b. Guano used in 1878 on the land.

c. Fences built on the land.

d. Ditching and draining bottom land.

e. Improvement of the land from industry and labor of defendants.

f. Value of manure left when the plaintiffs regained possession.

Upon hearing the exceptions, the court overruled the first and fourth, sustained third, and in part the second, reducing the value of the rental to $75 for the first year, $100 for the second, and left undisturbed the referee's allowance of $150 for each of the three remaining years. The result of all which is to reduce the indebtedness of the defendants to $348.68.

The defendants appeal presents but two questions:

1. Should the defendant be charged with the rental value of the lands, or with the annual interest on the purchase money?

2. Is he entitled to credits as specified in the 4th exception?

The legal consequences of the rescission of the contract of sale is to restore the parties, as far as practicable, to the position they would have occupied if no contract had been entered into. The vendee is entitled to the return of any of the purchase money he may have paid, the vendor to the value of the use and occupation of the premises, that is, to a fair rental annual value thereof, and this involves the allowance of any improvements bestowed increasing the value of the premises during the possession. Upon this basis the court seems to have acted in diminishing the charge for the two first years of the occupancy.

This rule, consonant with the principles of equity, has been recognized in the rulings of the court in cases in this respect similar to the present.

Thus, where land was sold by an executrix in a mistaken exer.ise of ł ower supposed to be conferred and the sale was vacated, the reference was for "an account reimbursing

(Whitaker) the purchaser, the value of what he paid for the land and *charging him with rents and profits."* *Wetherell* v. *Gorman,* 73 N. C., 380. When the account had been taken, upon a second appeal from rulings upon exceptions thereto, the court adhered to the terms of the order of reference, declaring that in ascertaining a fair rent "the enhanced value of the land by reason of any improvement made thereon," not the costs of the improvement, was the proper credit to be allowed. 74 N. C., 603.

Again in *Hill* v. *Brower,* 76 N. C., 124, the first sale being annulled and a resale ordered, BYNUM, J., referring to the claim for improvements, says: "If the land will sell for so much, he (the purchaser) is entitled to the repayment, with interest, of the purchase money paid and also to the value of his improvement put upon the land, with the qualifica- tion however that the improvements must be estimated according to the enhanced value conferred upon the land. *The defendant must account for the rents and profits."*

The authorities cited for the appellant do not conflict with this rule, and are either to the effect that the relations subsisting between vendor and vendee (and those between mortgagee and mortgagor are similar) are such that the latter, being admitted into possession, is not responsible for rents, the equitable estate being in him, charged with the payment of a sum of money to the other party. In other words the vendor becomes entitled to the profit as an incident to his estate, and the vendee's right is, to be paid the purchase money. The cases have no application to a contract voluntarily annulled.

The argument also proceeds upon the ground of a conceded inability to make title, and the discharge of the purchaser in consequence, while no such fact has been determined, and the necessity of making the enquiry is removed by a voluntary cancellation of the agreement, the effect of

which is to put the parties *in statu quo* and restore his own to each.

It is further insisted for the defendant that he should not be required to pay anything to the plaintiffs, since he will still remain liable to the action of the true owner for damages. As we have said it does not appear that the title is in any other person who can hold the defendant still liable, and he cannot, upon a mere suggestion of the kind, be allowed, under a contract, to enter upon, use and appropriate the profits of the land, and then repudiate all obligation upon an allegation of a want of title in the plaintiffs, by whose authority and permission this was done. In this way he might escape liability altogether and retain the profits for himself.

It is suggested also that as an action at common law did not lie upon an implied contract to pay for the use and occupation of land, and the statute which gives it is repealed by the act of 1868–'69, ch. 156, § 23, in analogy, no allowance is due to the plaintiffs therefor. While the act of 1856 (Rev. Code, ch. 63,) is repealed in express terms, its essential provisions are re-enacted in section 5 of the repealing act, and the inference drawn from the supposed repeal is erroneous.

But the claim to the restitution of the profits received by the defendant rests upon the basis of a broader and more comprehensive equity, which the court having acquired jurisdiction will enforce, and not upon the technicality by which relief was denied in the former action of *assumpsit.* That equity is the right of each party to a contract annulled by consent to have restored to each that which has been received by the other by virtue of the rescinded contract, and properly belongs to the former, and upon this principle their respective claims are adjudged and settled.

The ruling in regard to the 4th exception must be sustained also. There is no evidence accompanying the report

from which we can see that the credits are well founded, or that they have been refused, or that they did not enter into the consideration of the court in reducing the rental value of the land for the first two years. There is therefore no ground upon which we can be asked to review the rulings of the court, and it is certainly needless to repeat that a party must show the assigned error or the judgment will be affirmed.

We do not wish to be understood as concurring in all the rulings against the plaintiff, and we pretermit an expression of opinion upon their correctness, because the plaintiff does not appeal and that matter is not before us.

There is no error and the judgment must be affirmed.

No error.                                        Affirmed.