The plaintiff alleges that the feme defendant, being the owner of the land described in the complaint, with the written assent of her husband, the male defendant, for a full and valuable consideration, conveyed said land to him by deed, bearing date 6 July, 1904. The said deed contains the following covenants: "And the said Howard Browning and wife covenant to and with the said D. A. Fishel, his heirs and assigns, that they are seized of said premises in fee, and have right to convey the same in fee simple as it was conveyed to them; that the same are free from all encumbrances, and that they will warrant and defend the said title to the same against the claims of all persons whatsoever." That upon the delivery of said deed to him, and in accordance with his contract with defendants, plaintiff undertook to enter upon the said land, when he was met by the widow and heirs of one Louis Baker, who were in possession and who forbade his entrance and disputed his right and title to the same, which fact was at once reported to defendants. The feme
defendant acquired title to said land by virtue of a sale and deed pursuant thereto, made by the administrator of Louis Baker, deceased, for the purpose of making assets to pay debts. The heirs of said Baker resisted the recovery by plaintiff of said land in an action brought by him, and by independent proceeding, as well as by motion in the original cause, alleging that no process was served upon them. The widow resisted recovery, alleging that she was entitled to have dower allotted in (73) said land. That the litigation for the recovery of the land continued two years, plaintiff being finally successful; that plaintiff expended on account of said litigation $287 in cost and counsel fees; that the interest on the purchase money during the said litigation was $102, no part of which defendants have paid, although requested to do so. Plaintiff further alleges that the bargain, contract,. and covenant of the defendant E. P. Browning, set forth in said deed,. to sell and deliver said lands to him, and to warrant and defend the title thereto, was broken by her failure to deliver possession thereof to *Page 53 
plaintiff; that thereby plaintiff suffered loss and was endamaged and forced and compelled to incur the expense and outlay above set out, and that the defendant E. P. Browning is liable to him therefor as the measure of his damages by reason of the breach of the said contract and covenant, in failing to deliver said lands to plaintiff and in failing to defend the title. He demands judgment for the sum of $389 and interest.
Defendants demurred to the complaint, and assigned as grounds therefor:
First. That said action is for alleged damages due by reason of a false covenant of warranty of title, and the plaintiff does not allege in said complaint, as a breach of contract, an ouster or eviction by paramount legal title.
Second. That the complaint, upon its face, discloses that the defendant's wife, E. P. Browning, had a good and sufficient title to the property, and that the plaintiff got such title in fee by the deed of the defendant, and that the plaintiff recovered possession of the property under their said deed.
Third. That the complaint shows that the plaintiff was entitled, under his deed from the defendant, to the possession of the property, the interest of the tenant in dower (the dower not having been allotted) being subordinate to that of the heirs.
Fourth. That the complaint shows that the dower had not been (74) allotted, and the tenant in dower, therefore, had no right to hold possession against the title of the purchaser, the plaintiff.
From a judgment sustaining the demurrer, plaintiff appealed.
After stating the case: The deed set forth in the complaint contains several covenants: (1) The covenant of seizin and right to convey. (2) Covenant against encumbrances. (3) General warranty, which is, under our decisions, a covenant for quiet enjoyment. It is not clear that the plaintiff intends to allege a breach of the covenant of seizin. Giving, however, the language of the complaint a liberal construction for the purpose of discovering such allegation, we are of the opinion that, for the purposes of this appeal, the feme defendant was seized of the land; that she had title thereto, with right of entry, subject to the encumbrance of the right of dower in the widow of Louis Baker. It is conceded that, with this exception, she had the title of Baker. Whatever controversy the heirs made in regard to the validity of the proceeding by the administrator and the sale made thereunder is *Page 54 
conceded to have been without foundation. It is further conceded that the widow was entitled to have her dower allotted in the land, and that no allotment was made. It has always been held by this Court that, until allotment, the widow has no right to retain possession of her deceased husband's lands against the heir or those claiming under him. In Spencerv. Westcott, 18 N.C. 213, Daniel, J., said: "The widow has no right of dower until it has been assigned to her. . . . It is not until her dower has been duly assigned that a widow acquires a vested estate for life which will entitle her to maintain ejectment. On recovering (75) at law, the sheriff delivers the demandant possession of her dower by metes and bounds." Webb v. Boyle,63 N.C. 271. In S. v. Thompson, 130 N.C. 680, defendant was indicted for forcible entry and detainer. It appearing that the prosecutrix was in possession after the death of her husband, no dower having been assigned,Furches, C. J., said: "She was not the owner of the land, from her own evidence, which tends to show, and we will assume did show, that the land she lived on belonged to her husband before his death and descended to his heirs, as no will is alleged or shown. She was entitled to dower, but this land had not been assigned or allotted to her. And the fact that she was his widow and entitled to dower gave her no right to any part of the land." Whether in this State, in the absence of any statute, she is entitled, under chapter 7, Magna Carta, to her quarantine, is not presented on this record, for the same reason assigned in Spencer v. Westcott, supra, that it does not appear that the mansion house was situate on the land in controversy. 10 A. and E., 148. We are of the opinion, therefore, that the possession of the heirs and widow of Baker was not a breach of the covenant of seizin or "the right to convey in fee simple as the same was conveyed to them." The covenant of seizin refers to the title and not the possession. Rawle on Covenants, 60, 61.
Passing, for the present, the next covenant, we find in the deed the usual covenant of warranty, which, as said by Taylor, C. J., in Herrinv. McEntyre, 8 N.C. 410, is subject to the same construction as a covenant for quiet enjoyment. This is common learning with us. What, then, are the plaintiff's rights, treating the covenant as one for quiet enjoyment, sometimes called "the sweeping covenant"? Howell v. Richards, 11 East, 833. A breach of this covenant occurs when there is an eviction or disturbance of the possession by title paramount. Usually the action is based upon an eviction, either actual or constructive, of the (76) covenantee after he has entered upon or been put into possession by his covenantor. Where title passed by deeds, operating by livery of seizin, the breach could not otherwise occur, because the transfer of actual possession was essential to perfecting the conveyance. After the enactment of the statute of uses, when title passed by virtue *Page 55 
of the declaration of the use and the transfer of the possession by operation of the statute, it frequently happened that transfers of title occurred when some person other than the bargainor was in the actual occupation of the land. We are not concerned, in this discussion, with the effect of the statutes against champerty, passed to prevent speculation in disputed titles. In such cases, where the bargainee, whose entry was barred by an adverse occupant, called upon his bargainor, who had given him a covenant of quiet enjoyment, to make good his covenant or pay damages for its breach, he was met with the answer that he had suffered no eviction, and therefore had no right of action. The law was so held by a number of courts. Parker, C. J., said: "No entry having been made by the grantee under his deed, an eviction could not have taken place." Chappellv. Ball, 17 Mass. 220. Several other courts adopted this view. In Grist v. Hodges, 14 N.C. 198, the question for the first time came before this Court. Ruffin, J., said: "The existence of an encumbrance, or the mere recovery in a possessory action under which the bargainee has not actually been disturbed, are held, for technical reasons, not to be breaches of a covenant for quiet possession, or, in other words, of our warranties. But that is a very different case from this, in which the bargainee never, in fact, was in possession, but was kept out by the possession of another under better title existing at the time of the sale and deed, and ever since. . . . The existence of a better title, with an actual possession, is of itself a breach of the covenant. It is manifestly just that it should be so considered, for otherwise the covenantee would have no redress but by making himself a trespasser by an actual entry, which the law requires of nobody." The learned justice (77) places his conclusion upon the ground that, as between the bargainor and bargainee, the statute of uses, immediately upon the execution of the deed, carries the possession to the bargainee. As between the parties, the bargainee is, on strict legal principles, in. If, however, there be in reality an adverse possession, he can be so only for an instant, because "the implication against the truth will be no further than is necessary to make the title effectual for its purposes." The bargainee will be taken to have been evicted eo instanti the possession by operation of the statute takes place. Thus, by a refinement, substantial justice is done. InShuttack v. Lamb, 65 N.Y. 499, the question is ably discussed and the same conclusion reached by Earl, C. He reviews all of the cases. Dwight,C., dissented, saying that many cases in the various States follow Grist v.Hodges, "in which the theory is stated with admirable force," quoting the language of Mr. Rawle. Peters v. Bowman, 98 U.S. 56. The defendants insist that, conceding the eviction upon the authority of Grist U. Hodges,supra, there was no superior or paramount title in the evictors; that the right to sue arises only upon an *Page 56 
eviction under paramount title. The plaintiff says that, conceding the general rule, his covenant is not confined to an eviction under paramount title, but extends to "the claims of all persons whatsoever," thus protecting him against damage by reason of an eviction by trespassers. This question appears to have been much mooted, and the early English authorities contradictory. The learned counsel for the plaintiff calls to our attention the form of the covenant of general warranty given by Mr. Washburn, which is confined to "all lawful claims and demands," etc.; whereas, he says, the covenant for quiet enjoyment, includes indemnity against "the claims of any and all persons whatsoever." Mr. Rawle says: "There were several old authorities which held that a covenant thus absolutely expressed extended to all interruptions and (78) disturbances whatsoever, whether lawful or tortious; and, although authority was not wanting in opposition to this doctrine, the law seems not to have been settled until Hayes v. Bickerstaff, 4 Vaughan, 118. That case decided that the covenant, however generally expressed, must be understood as applying merely to the acts of those claiming by title. In the first place, it would be unreasonable that a man should covenant against tortious acts of strangers which he could not see or prevent; secondly, the law gives a remedy against the wrongdoer; thirdly, the covenantee might thus have a double remedy and receive a double compensation; and, fourthly, it would enable him to injure the covenantor by colluding with a stranger to make a tortious entry." Rawle on Covenants, 147. Certain exceptions to the rule are stated, but as none of them apply to this appeal, it is not necessary to discuss them. In Platt on Covenants, 3 Law Lib., 312, a form is given, said to be in general use, concluding, as in this record, "or any other person or persons whomsoever." The author says: "A general covenant for quiet enjoyment was, in earlier times, holden to extend to tortious evictions or interruptions, but this doctrine was never fully acquiesced in; and a different rule is now established, so that at present, when we speak of a covenant providing against the acts of all men, it is to be understood of all men claiming by title, for the law will not adjudge that the wrongful acts of strangers are covenanted against. Hence, if one who has no right ousts or disseizes a purchaser, he shall not have an action against the vendor; the reason being that the law has already furnished the means of redress by giving the injured party an action of trespass against the wrongdoer." So Lord Ellenborough,C. J., in Nash v. Palmer, 1 Barn. and Cres., 29, says: "The rule has been correctly stated that, where a man covenants to indemnify. against all persons, this is but a covenant to indemnify against lawful title." Wotton v. Hele, 2 Saund., Part II, 177. "The covenant for quiet enjoyment is the same as the covenant (79) of warranty in all its practical effects. It is an assurance *Page 57 
to the grantee that his enjoyment of the land conveyed shall not be disturbed by lawful means, but does not attempt to protect him against mere disturbances by trespassers." Hopkins Real Prop., 448; Underwood v.Birchard, 47 Vt. 305. While the precise question has not, so far as our investigations go, been before this Court, we find the general principle recognized, as in Midgett v. Brooks, 34 N.C. 145, Nash, J., says: "The words in the deed we are considering, upon their face, import a promise or agreement on the part of the vendor that Midgett shall enjoy the premises free from disturbance from any one claiming by title paramount; and that is a covenant for quiet enjoyment."
We, therefore, conclude that, while there was an eviction within the terms of the covenant, the plaintiff's action upon the covenant fails, because it appears from the facts set forth in the complaint that the evictors had no title — they were mere trespassers. This is shown by the result of plaintiff's action brought to eject them. There is, however, in the deed a covenant against encumbrances. The learned counsel for defendants concede that the dower right of the widow, independent of her wrongful possession, was an encumbrance upon the title which constituted a breach of the covenant. It is well settled that the right of dower is such an encumbrance upon the land as works a breach of the covenant. Gore v.Townsend, 105 N.C. 228; 1 Jones Conveyances, sec. 867. The difficulty with which plaintiff is confronted in this action is, that he does not claim or show any damage sustained by reason of such encumbrance, but expressly excludes any such claim by alleging that his measure of damage is the amount paid by way of counsel fees and cost and the interest on the entire purchase money. This certainly cannot be correct. As said by Mr. Rawle, the rule which has been adopted as to the measure of damages for breach of this covenant is very simple. If the encumbrance is contingent in its character, and if nothing has been paid by the plaintiff towards removing or extinguishing (80) it, and if it has inflicted no actual injury upon him, he can obtain but nominal damages, as he is not allowed to recover a certain compensation for running the risk of an uncertain injury. Rawle on Cov., 129; Hale on Dam., 369. Until dower was allotted, the widow had no right to interfere with plaintiff's possession. As she never had dower allotted, he sustained no damage by reason of the existence of her right to do so. It may be that, for the purpose of relieving his estate from the uncertain extent of the encumbrance, the plaintiff may have filed a petition against the widow for the allotment of her dower. The heir could do so after the expiration of three months from the death of her husband. Revisal, sec. 3088. Whether, without doing so, the plaintiff could sue upon the covenant, alleging that, by reason of the encumbrance, the market value of his title was depreciated in a sum either *Page 58 
certain or capable of being made so, is not presented upon this appeal, because there is no such allegation. The complaint is drawn upon the theory that counsel fees actually paid and interest on the entire purchase money constitute the measure of damages for the breach of covenant against an encumbrance which could, in no possible event, have affected more than one-third in value of the land during the life of the widow. Issue was joined upon the demurrer. His Honor was clearly correct in holding that plaintiff was not entitled to recover upon the complaint. It may be that, by an amendment of the complaint, he would have been entitled to at least nominal damages. His Honor would have permitted such amendment if so requested, but, as plaintiff elected to stand by his complaint as drawn, and as, for the reasons we have pointed out, he is not entitled to maintain his action, we can only affirm the judgment. It is well understood that, if the facts set forth in the complaint show a remediable legal wrong, the action shall not be dismissed because of the relief demanded. Here, however, while the plaintiff (81) shows that he held defendants' deed, containing a covenant against encumbrances, and that a contingent encumbrance was in existence, he further shows that, prior to the bringing of his action, the possibility of damage by reason of such encumbrance came to an end by the death of the widow. He says: "Plaintiff avers that the bargain, contract and covenant . . . was broken by her failure to deliver possession thereof to plaintiff"; and that "thereby plaintiff suffered loss and was endamaged and forced and compelled to incur the expense and outlay above set out, and that the defendant E. P. Browning is liable to him therefor as the measure of his damages by reason of the breach of the said contract and covenant in failing to deliver said lands to plaintiff and in failing to defend the title." This language, under the most liberal construction, does not aver any damage by reason of the breach of the covenant against encumbrance.
Upon a careful consideration of the complaint, we concur with his Honor in sustaining the demurrer.
Affirmed.
Cited: Bethell v. McKinney, 164 N.C. 75; Taylor v. Meadows 169 N.C. 126. *Page 59